[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 809 
This Court granted the defendant American General Life and Accident Insurance Company ("American General") permission under Rule 5, Ala. R.App. P., to appeal an interlocutory order denying it a summary judgment. We reverse the order denying American General a summary judgment and remand the case to the trial court with instructions.
"In reviewing a summary judgment, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." Giada v.Tucker, 746 So.2d 998, 1000 (Ala. 1999). Viewed in that manner, the record established the following.
Between 1947 and 1978, the plaintiff James T. Underwood purchased industrial life insurance policies from The Independent Life Accident Insurance Company ("Independent Life"), insuring himself, his wife, and their children. The premium rate for each policy was set when the policy was issued. The plaintiff began *Page 810 
paying the premiums for each policy contemporaneously with its issuance.
All of the Underwood insureds were black. Independent Life charged higher premiums for industrial life policies insuring blacks than it did for industrial life policies insuring whites. Consequently, the plaintiff paid higher premiums for the policies than he would have paid had he and his family been white. Independent Life merged into American General in 1997.
Independent Life and, after 1997, American General retained the rate books specifying higher premiums for industrial life policies insuring blacks and periodically reviewed them to respond to questionnaires and surveys from state departments of insurance and the National Association of Insurance Commissioners ("NAIC"). In January 1988, NAIC inquired in a written survey whether Independent Life had ever used race as a basis for differentiating in the premiums it charged for life insurance. An Independent Life vice president researched the rate books and interviewed employees to respond to this survey question. The vice president determined that Independent Life had used race as a basis for differentiating in the premiums it charged for life insurance. Thus, he prepared a draft response answering the survey question in the affirmative:
 "I. Have you ever used race as a basis for differentiating in life insurance premiums charged?
"yes x no ____"
The vice president submitted the draft response to an Independent Life senior vice president for his review. The senior vice president instructed the vice president to "try to find a way to avoid Yes answers." The vice president responded that the "only way I know [how to avoid yes answers] is just [to] lie [to] hide [the 19]45 R[ate] B[ook]." Ultimately, in response to the survey Independent Life stated that it had not used race as a basis for differentiating in the premiums it charged for life insurance. The plaintiff testified that he did not learn until the year 2000 that Independent Life had used race as a basis for charging premiums on the policies he had purchased.
In September 2000, over 20 years after the plaintiff had begun paying the premiums on these policies, he sued American General, as the successor of Independent Life, for unjust enrichment, money had and received, fraud, suppression, conversion, and outrage. American General moved for a summary judgment on the ground, among others, that the 20-year rule of repose barred the plaintiff's claims. The trial court held that the rule of repose did not bar the plaintiff's claims. On this rationale, the trial court denied the motion for a summary judgment and reserved ruling on the other grounds raised by American General. On motion by American General, the trial court certified the denial of the summary judgment for an interlocutory appeal under Rule 5, Ala. R.App. P.
The trial court cited several alternative reasons for holding that the rule of repose did not bar the plaintiff's claims. First, the trial court reasoned that the rule of repose did not apply because Independent Life and American General had continued collecting race-based premiums until a date that was less than 20 years before the plaintiff sued American General. Second, reasoning that the rule of repose would not begin running until the plaintiff was on notice of the existence of his claims against American General, the trial court held that the plaintiff's testimony that he did not learn until 2000 that Independent Life had charged him race-based premiums created a genuine issue of material fact whether the plaintiff was on notice of the existence *Page 811 
of his claims more than 20 years before he sued American General. Third, the trial court reasoned that American General was estopped from asserting the rule of repose by the response of Independent Life to the NAIC survey stating that it had not charged race-based premiums. Fourth, the trial court reasoned that the Independent Life vice president's preparation of the draft response to the NAIC survey in 1988 stating that Independent Life had charged race-based premiums and the communications between the vice president and the senior vice president about this draft response constituted a sufficient recognition of the plaintiff's claims by Independent Life to establish an exception to the rule of repose for the plaintiff's claims.
 Issues
This appeal raises these issues: (1) whether the continuing collection of race-based premiums from the plaintiff tolled the running of the rule of repose, (2) whether the plaintiff's lack of notice of the existence of his claims prevented the running of the rule of repose, (3) whether the false response of Independent Life to the survey about the charging of race-based premiums estopped American General from asserting the rule of repose as a defense, and (4) whether the Independent Life vice president's draft response to the 1988 NAIC survey stating that Independent Life had charged race-based premiums and the communications between the vice president and the senior vice president about this draft response constituted a sufficient recognition of the plaintiff's claims by Independent Life to start a new 20-year repose period running on the plaintiff's claims. We will address each of these issues in turn.
 Law "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. Indus. Dev. Auth., 749 So.2d 425 (Ala. 1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996). `[W]here the evidence is in conflict, the issue must [be tried to the fact-finder].' Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47
(Ala. 1984). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra."
Bruce v. Cole, 854 So.2d 47, 54 (Ala. 2003).
The party moving for summary judgment bears "`the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.'" Ex parte General MotorsCorp., 769 So.2d 903, 909 (Ala. 1999) (quoting Berner v.Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)).
 "`The manner in which the movant's burden of production is met depends upon which party has the burden of proof . . . at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"). The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.'"
Ex parte General Motors, 769 So.2d at 909 (quoting Berner,543 So.2d at 691 (Houston, J., concurring specially)). If the movant meets his burden of production by *Page 812 
making a prima facie showing that he is entitled to a summary judgment, "then the burden shifts to the nonmovant to rebut the prima facie showing of the movant." Lucas v. Alfa Mut. Ins.Co., 622 So.2d 907, 909 (Ala. 1993).
 "In order to rebut such a prima facie showing, the nonmovant must show `substantial evidence' that creates a genuine issue of material fact. Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Id.
The common-law rule of repose, which is an affirmative defense,Rector v. Better Houses, Inc., 820 So.2d 75, 78 (Ala. 2001), "bars actions that have not been commenced within 20 years from the time they could have been commenced." Tierce v. Ellis,624 So.2d 553, 554 (Ala. 1993). The rule of repose "is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence [has been] obscured." Boshell v. Keith, 418 So.2d 89, 91 (Ala. 1982). "Lack of notice is not sufficient to avert the application of the [rule of repose]." Ballenger v. Liberty Nat'l Life Ins. Co.,271 Ala. 318, 322, 123 So.2d 166, 169 (1960); accord Ex parteLiberty Nat'l Life Ins. Co., 825 So.2d 758, 764 (Ala. 2002), andEx parte Liberty Nat'l Life Ins. Co., 858 So.2d 950, 957-59
(Ala. 2003) (Johnstone, J., dissenting). "[T]he only element of the rule of repose is time." Boshell, 418 So.2d at 91.
"The only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim."Boshell, 418 So.2d at 92. The recognition must be distinct.Ballenger, 271 Ala. at 323, 123 So.2d at 169. Such a recognition will restart the running of the 20-year period.Hendley v. First Nat'l Bank of Huntsville, 234 Ala. 535, 537,176 So. 348, 350 (1937). For example, a partial payment on a mortgage debt is sufficient recognition by the mortgagor of the lien of the mortgage to start a new 20-year repose period running on the mortgagee's claims under the mortgage. Hendley, supra.
Likewise, a statement in a deed that the property conveyed by the deed is subject to a mortgage is a sufficient recognition of the lien of the mortgage to start a new 20-year repose period running on the mortgagee's right to enforce the lien. Braun v.Pettyjohn, 176 Ala. 592, 594-95, 58 So. 907, 908 (1912).
The rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit. Spain v. Brown WilliamsonTobacco Corp., 872 So.2d 101, 129 (2003) (Johnstone, J., writing specially).
 "In some instances, [the first point in time when all of the essential elements of a claim first coexist so that the plaintiff could validly sue and, therefore, the point in time when the rule of repose begins to run] may be the same as the date of the `accrual' of a claim. However, . . . repose does not depend on `accrual' because the concept of accrual sometimes incorporates other factors, such as notice, knowledge, or discovery. For example, see Ala. Code 1975, § 6-2-3 (providing that a fraud claim does not accrue `until the discovery by the aggrieved party of the fact constituting the fraud')."
Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d at 764 n. 2. A suit on a tort claim may not be commenced until the defendant's *Page 813 
tortious act proximately causes the plaintiff to suffer an actual injury.[1] Stephens v. Creel, 429 So.2d 278, 280-83 (Ala. 1983). If a plaintiff's actual injury resulting from a tort is the payment of premiums for an insurance policy, the payment of the first premium for the policy establishes the element of damage essential to a claim for the tort. Boswell v. LibertyNat'l Life Ins. Co., 643 So.2d 580 (Ala. 1994), and Donoghue v.American Nat'l Ins. Co., 838 So.2d 1032 (Ala. 2002). On claims for unjust enrichment and money had and received, a plaintiff may commence a suit as soon as the defendant receives money and the circumstances imply the obligation to restore it. See MutualBldg. Loan Ass'n v. Watson, 226 Ala. 526, 528, 147 So. 817,817 (1933) ("An action for money had and received is one in assumpsit based upon a promise to repay implied by law. . . .");Holloway v. Putnam County, 534 S.W.2d 292, 295 (Tenn. 1976) ("[A taxpayer's common-law suit for recovery of county taxes paid by the taxpayer] is in the nature of an action of assumpsit for money had and received and is governed by the six-year statute of limitation. . . . The cause of action accrues and the statute begins to run on the date of payment of taxes under protest.").
 Analysis
In the present case, the rule of repose began running on each claim arising from the purchase of a particular policy as soon as the plaintiff paid the first premium for the policy because that payment supplied the last essential element necessary for all essential elements of the particular claim to coexist so that the plaintiff could file suit. Boswell, supra; Donoghue, supra;Tierce, supra; and Spain, supra (Johnstone, J., writing specially). Because the plaintiff paid the first premium for each policy more than 20 years before he commenced this lawsuit against American General, the rule of repose barred his claims before he commenced this lawsuit. Tierce, supra.
Because "[t]he only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim,"Boshell, 418 So.2d at 92, the continued collection of premiums after the payment of the first premium for each policy did not toll the running of the rule of repose. Because "[l]ack of notice is not sufficient to avert the application of the [rule of repose]," Ballenger, 271 Ala. at 322, 123 So.2d at 169, the plaintiff's lack of notice of the existence of his claims against Independent Life and American General did not prevent the running of the rule of repose. Ex parte Liberty Nat'l Life Ins. Co.,supra, 858 So.2d at 957-59 (Johnstone, J., dissenting). Because the rule of repose "is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence [has been] obscured," Boshell,418 So.2d at 91, estoppel does not apply to the rule of repose. Therefore, the false response of Independent Life to the NAIC survey about race-based premiums did not estop American General from asserting the rule of repose as a defense.
While the draft response to the NAIC survey prepared by the Independent Life vice president and the communications between the vice president and the senior vice president about that draft response recognized that Independent Life had charged race-based premiums, those documents *Page 814 
did not recognize the claims asserted by the plaintiff now before us. Rather, those documents only constituted evidence tending to prove an essential element of the claims. The documents, in and of themselves, did not foreclose either the conclusion that the plaintiff himself was not charged race-based premiums on the one hand or the conclusion that the race-based character of the premiums was not suppressed from this particular plaintiff on the other hand. Consequently, neither the draft response nor the communications about the draft response constituted evidence of a distinct recognition of the plaintiff's claims sufficient to start a new 20-year repose period running against the plaintiff's claims.
 Conclusion
Because the rule of repose barred the plaintiff's claims, the trial court erred in denying American General a summary judgment on that ground. Accordingly, we reverse the order denying American General a summary judgment and remand the case to the trial court with instructions to enter a summary judgment for American General.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] A suit on a breach-of-contract claim, on the other hand, may be commenced as soon as the defendant breaches the contract, regardless of whether the plaintiff has suffered an actual injury. Stephens v. Creel, 429 So.2d 278 (Ala. 1983). In the case now before us, the plaintiff did not sue for breach of contract.